# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LYNETTE LEWIS,<br>            Appellant, | DOCKET NUMBER<br>PH-1221-19-0060-W-1 |
| v. | |
| SOCIAL SECURITY<br>    ADMINISTRATION,<br>            Agency. | DATE: August 9, 2024 |

## THIS ORDER IS NONPRECEDENTIAL[1]

Lynette Lewis, Baltimore, Maryland, pro se.

Jennifer Karangelen, Esquire, and Julie Tong, Esquire, Baltimore,
    Maryland, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication
of this appeal.

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2     The appellant was a GS-13 Program Analyst in the agency's Office of Electronic Services and Technology, Division of Strategic Planning and Customer Engagement. Initial Appeal File (IAF), Tab 1 at 1, Tab 20 at 17. On November 14, 2018, the appellant filed an IRA appeal, alleging that the agency took various personnel actions against her in retaliation for protected disclosures. IAF, Tab 1 at 3, 5. Specifically, she alleged that, in August 2018, she disclosed to various management officials and the agency's Office of Inspector General (OIG) that a manager in her division was attempting to use the appellant's .edu email address to obtain free online training for the agency. *Id*. at 5. The appellant further alleged that, in retaliation for her disclosures, agency management engaged in various acts of reprisal. *Id*. She waived her right to a hearing. *Id*. at 2.

¶3     The administrative judge issued a jurisdictional order to which the parties responded. IAF, Tabs 13, 19, 20. After the close of the record, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 33, Initial Decision (ID). The administrative judge found that the appellant failed to make a nonfrivolous allegation that she made a protected disclosure or that any such disclosure was a contributing factor in a personnel action. ID at 7-9. In the alternative, he found that the agency proved by clear and convincing evidence that it would have taken the same actions even absent the appellant's disclosures. ID at 8-9.

¶4     The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. She has also filed supplements to her petition for review. PFR File, Tabs 3, 6. The appellant also submits a motion to accept an additional pleading.

PFR File, Tab 7. Some of these pleadings contain additional documents.[2] The agency has filed a response to the appellant's petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 9-10.

## ANALYSIS

As relevant here, the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before the Office of Special Counsel (OSC) and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that

---

[2] In her petition for review, the appellant states that the agency issued a proposal to remove her on May 19, 2019. PFR File, Tab 1 at 4. The documents she submits on review are all relevant to her proposed removal and not to her whistleblower reprisal claim. PFR File, Tabs 3, 6. There is no evidence that she exhausted her administrative remedies before OSC concerning her proposed removal. IAF, Tab 1 at 11. The Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). The appellant has not shown that these documents are material to the issues in this appeal, i.e., the Board's jurisdiction over the disclosures and personnel action she raised below. Therefore, we have not considered these documents. As to the appellant's motion for leave to file an additional pleading, PFR File, Tab 7, the Board's regulations do not provide for pleadings other than a petition for review, a cross petition for review, a response to the petition for review or cross petition for review, and a reply to a response. 5 C.F.R. § 1201.114(a). For the Board to consider a party's pleading, other than one of those set forth above, the party must describe the nature and need for the pleading. 5 C.F.R. § 1201.114(a)(5). Here, the appellant states only that she "is filing a motion to request an additional pleading." PFR File, Tab 7. We deny the appellant's motion for failure to satisfy the foregoing criteria.

were previously raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* Appellants may demonstrate exhaustion through their initial OSC complaint; evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and their written responses to OSC referencing the amended allegations. *Id.* Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id.*

¶7 In his initial decision, the administrative judge did not directly address the exhaustion requirement because he found that the agency had conceded the issue.[3] ID at 6; IAF, Tab 20 at 7. We find that more analysis of the issue was required because exhaustion is a mixed question of fact and law, and stipulations of mixed fact and law are not binding on the Board. *See MacDonald v. Department of Justice*, 105 M.S.P.R. 83, ¶ 10 (2007). Furthermore, because the appellant has raised multiple potential whistleblower claims in this appeal, it was incumbent on the administrative judge to discern between the various claims that had and had not been exhausted. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 7-11, 13. Accordingly, the Board will undertake the analysis on review.

¶8 Although the administrative judge fully informed the appellant of the exhaustion requirement and how to prove it, the record contains very limited evidence on the issue.[4] IAF, Tab 13 at 2, 7-8. The appellant did not file a copy of her OSC complaint, and she did not file a declaration or affidavit stating that

---

[3] To say that the agency conceded exhaustion is an overstatement because the concession was for the sake of argument. IAF, Tab 20 at 7. It would be more accurate to say that the agency did not contest the issue.

[4] The initial decision was issued prior to the Board's decision in *Chambers*, 2022 MSPB 8. To the extent that the administrative judge stated that the appellant was required to inform OSC of the "precise" ground of her claim, his articulation of the exhaustion standard was arguably more stringent than the requirement as stated in *Chambers*. Nevertheless, we find that the appellant's substantive rights have not been prejudiced.

she raised with OSC the substance or facts of her Board appeal. The only evidence of what the appellant raised to OSC is the information contained in the OSC letters that she filed with her initial appeal form. IAF, Tab 1 at 15-17. As far as disclosures are concerned, the letters reflect that the appellant notified OSC of her disclosure to agency management that a supervisor attempted to misuse the appellant's .edu email address. *Id*. at 16. OSC's letter does not mention the appellant's disclosure to the OIG. However, because the OIG disclosure concerned the same matter and occurred around the same time, we find the evidence sufficient to show that the appellant exhausted this disclosure as well. Finally, the record shows that the appellant alleged to OSC that the agency retaliated against her for "refusing to commit fraud," which we infer pertains to her refusal to use her .edu email address to obtain free educational materials for the agency. *Id*. at 15.

¶9 Among the alleged retaliatory actions identified in OSC's letter, the only one that would qualify as a standalone personnel action is the denial of a reassignment. *Id*. at 15-16; *see* 5 U.S.C. § 2302(a)(2)(A)(iv). The other actions identified in OSC's letters are not separately enumerated under the statutory definition of "personnel action." IAF, Tab 1 at 15-16; *see* 5 U.S.C. § 2302(a)(2)(A). However, considered together, they could potentially support a finding that the agency subjected the appellant to a significant change in duties, responsibilities, or working conditions.[5] *See generally* 5 U.S.C. § 2302(a)(2)(A)(xii); *Skarada*, 2022 MSPB 17, ¶¶ 13-16. Because the appellant notified OSC that she was alleging a retaliatory "hostile work environment", IAF, Tab 1 at 15-16, we find that she has exhausted her claim that the agency retaliated against her

---

[5] In her Board appeal, the appellant alleged that the agency retaliated against her by giving her a lowered performance rating. IAF, Tab 19 at 5-6. This would constitute a standalone personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii). However, there is no evidence that the appellant raised the issue before OSC, and so the Board lacks jurisdiction over this claim. *See Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 7. In this regard, we observe that OSC closed its investigation on October 23, 2018, but the appellant did not receive the performance rating at issue until October 30, 2018. IAF, Tab 1 at 15, Tab 19 at 5.

through a significant change in duties, responsibilities, or working conditions, *see Skarada*, 2022 MSPB 17, ¶ 16 (explaining that allegations of a "hostile work environment" may be cognizable under the Whistleblower Protection Act as a significant change in duties, responsibilities, or working conditions).

¶10      Regarding the appellant's claimed disclosures and activities, in early August 2018, agency management was preparing for an upcoming employee training session when it realized that a website that had been used during previous trainings was no longer free of charge. IAF, Tab 19 at 14. One manager figured out that the website was still free of charge to individuals enrolled in school. He therefore sought out employees who he believed might have a .edu email address, with the intention of using such an email address to access the website. *Id*. When this manager approached the appellant, she declined to provide him her school email address, and she reported the incident to management and the OIG. IAF, Tab 21 at 10-11.

¶11      In his initial decision, the administrative judge found that the appellant did not make a nonfrivolous allegation that her disclosure was protected because a reasonable person would not find a request for the appellant's school email address to be an abuse of authority. ID at 7-8. We disagree with the administrative judge's analysis. First, we find that the appellant made a nonfrivolous allegation that her disclosure to management was protected under 5 U.S.C. § 2302(b)(8)(A)(i) because she reasonably believed it evidenced a violation of law, rule, or regulation. *See Tatsch v. Department of the Army*, 100 M.S.P.R. 460, ¶ 12 (2005) (stating that the Board does not require an appellant to correctly label the category of wrongdoing implicated by the circumstances of her disclosure). We find that a disinterested observer could reasonably conclude that it would be unlawful for the Government to obtain free services by masquerading as a student or an educational institution. Second, we find that the appellant has made a nonfrivolous allegation that her disclosure to the OIG was protected under 5 U.S.C. § 2302(b)(9)(C). *See Fisher v. Department*

*of the Interior*, 2023 MSPB 11, ¶ 8. Third, we find that the appellant has made a nonfrivolous allegation that her refusal to provide her school email address in furtherance of management's scheme to obtain free services under false pretense was protected activity under 5 U.S.C. § 2302(b)(9)(D).[6]

¶12    Regarding personnel actions, we find that the appellant made a nonfrivolous allegation that the agency failed to take a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iv) when it denied her request for reassignment. The appellant has also made a nonfrivolous allegation that her disclosures and activities were a contributing factor therein because management knew about these disclosures and activities,[7] and a period of no more than 3 months elapsed before management denied the appellant's resignment request. IAF, Tab 19 at 15-16; *see Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 12 (2008).

¶13    However, we find that the appellant's hostile work environment claim does not amount to a nonfrivolous allegation of a significant change in duties, responsibilities, or working conditions under 5 U.S.C. § 2302(a)(2)(A)(xii). The Board has held that this statutory provision should be interpreted broadly, to include any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, as determined on a case-by-case basis. *Skarada*, 2022 MSPB 17, ¶ 14. Nevertheless, to qualify as a personnel action under this clause, the agency actions at issue must, individually or collectively, have practical consequences for the appellant and have a

---

[6] We make no finding at this time about whether the appellant was refusing to obey an "order" within the meaning of the statute, or which, if any, law, rule, or regulation such order would have required her to violate. These are merits determinations. We note only that the plain language of the statute would appear to require that the appellant show that an order would actually have required her to violate a law, rule, or regulation —not just that she had a reasonable belief that it would have. 5 U.S.C. § 2302(b)(9) (D).

[7] We acknowledge that not every management official involved may have been aware of each of the appellant's disclosures and activities. Nevertheless, the record on this point is sufficient for jurisdictional purposes. *See Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1374-75 (Fed. Cir. 2016).

significant effect on the overall nature or quality of her working conditions, responsibilities, or duties. *Id*., ¶¶ 15-16. In this case, the appellant alleges that the agency denied her a police escort, listed a fictitious manager on her personnel records, refused to approve her leave in a timely fashion, removed her equal employment opportunity paperwork from the office printer, scheduled meetings to discuss her workload, and required her to meet individually with the Deputy Division Director.[8] IAF, Tab 1 at 15. For the most part, the appellant has not explained the details and circumstances of these alleged agency actions such that the Board could conclude that they substantially affected her working conditions. Regarding her August 8, 2018 meeting with the Deputy Division Director, the appellant states that the meeting constituted sexual harassment. IAF, Tab 1 at 5, Tab 19 at 5, Tab 22 at 4. Although sexual harassment certainly could amount to a significant change in working conditions, we find that the appellant in this case did not make a nonfrivolous allegation that sexual harassment actually occurred. She does not allege that the Deputy Division Director ever did or said anything sexually inappropriate to her or anyone else; rather, she argues that requiring her to attend a one-on-one meeting with him was sexual harassment per se. IAF, Tab 1 at 5, Tab 19 at 5, Tab 22 at 4. We disagree. Individual meetings with supervisors and managers are a normal and necessary part of Federal employment, and absent any sexually inappropriate comments or conduct, a reasonable person would not find such meetings to be sexually harassing. *See Sheryl S. v. Department of Agriculture*, EEOC Appeal No. Appeal No. 2021000167, 2022 WL 357444 at * 3 (Jan. 26, 2022) ("Claims of sexual harassment are evaluated from the objective viewpoint of a reasonable person in the victim's circumstances."). Considering the totality of the appellant's allegations in the light most favorable to her, we find that she did not make a nonfrivolous allegation that the agency

---

[8] The appellant alleged some other minor actions in her Board appeal, but because she has not shown that she raised them with OSC, we will not consider them. IAF, Tab 1 at 5, Tab 19 at 5-6; *see Skarada*, 2022 MSPB 17, ¶ 10.

subjected her to a significant change in duties, responsibilities, or working conditions.

¶14    As noted above, the administrative judge found that even if the appellant had established jurisdiction over her appeal, the agency proved by clear and convincing evidence that it would have taken the same actions absent the appellant's whistleblowing.  ID at 8-9.  However, under the statute, the Board may not proceed to the agency's affirmative defense unless it has first determined that the appellant established her case in chief by preponderant evidence. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 28 (2016); *see* 5 U.S.C. § 1221(e)(2).  The Board has not yet made a finding on the merits of the appellant's case in chief.

¶15    Further, the Board having now found jurisdiction over this appeal, the parties are entitled to a reasonable opportunity to file additional evidence and argument on the merits.  Read together, the jurisdictional and close of the record orders appear to say that the appellant would have an opportunity to address the merits of her appeal if the administrative judge found that she established jurisdiction over it.[9]  IAF, Tab 13 at 7-8, Tab 29.  Therefore, the administrative judge will allow the parties a full and fair opportunity on remand to supplement the record on the merits.

**ORDER**

¶16    For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.  Adjudication on

_____

[9] The facts in *Skarada* are similar to the extent that the appellant in that case waived his right to a hearing, the administrative judge dismissed the appeal for lack of jurisdiction, and the Board found jurisdiction on review.  However, the Board in *Skarada* proceeded to adjudicate the merits of the appeal on review because the parties had a full and fair opportunity to develop the record on the merits below.  Specifically, the administrative judge in *Skarada* notified the appellant that he was required to submit evidence pertaining to both jurisdiction and the merits.  2022 MSPB 17, ¶ 21.  For the reasons explained above, we find that the parties in this case have not yet had a full and fair opportunity to address the merits of the appeal.

remand will be limited to the alleged disclosures and personnel action identified in paragraphs 11 and 12 above and will include an opportunity for the parties to submit evidence and argument on the merits of the appeal. The administrative judge will then issue a new initial decision, in which he will determine whether the appellant has proven her case in chief, and if so, whether the agency has proven its affirmative defense.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.